UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NIKOLAS M. JORDAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 1:24-cv-00078-JRS-TAB |
| ) | |
| WARDEN, ) | |
| ) | |
| Respondent. ) | |

**Order Denying Petition for Writ of Habeas Corpus and
Directing Entry of Final Judgment**

Nikolas M. Jordan seeks a writ of habeas corpus under 28 U.S.C. § 2254. He challenges a disciplinary proceeding, COA 23-10-0132, that occurred while Mr. Jordan was a pretrial detainee at the Vanderburgh County Jail ("the Jail") on April 19, 2023. Mr. Jordan was found guilty of assaulting another person and not being properly clothed and was sanctioned with a 30-day loss of credit time. For the reasons explained below, the disciplinary proceeding did not violate Mr. Jordan's due process rights, and his habeas petition is **denied**.

A.   Overview

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt.

*Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

    **B.**    **The Disciplinary Proceeding**

As noted above, Mr. Jordan was in pretrial detention at the Jail on criminal charges when the conduct occurred. On April 19, 2023, Adam Manna wrote a conduct report in COA 23-10-0132, which stated:

> On 4/19/23 at approximately 1515 hours I was conducting mezzanine rec in my assigned housing unit B3. From my desk, I observed a large gathering of inmates on the mezzanine in front of M9 and M10. I observed inmate Nikolas Jordan have no shirt on. I also observed inmate John Money yelling at Jordan and other inmates. I noticed all the inmates were yelling about some sort of altercation. I called for lockdown and radioed for additional officers to help sort the situation out. I placed Jordan in handcuffs behind the back and had an assisting officer escort him out to B-Pod center. I then called Money down to the day room and placed him in handcuffs behind the back and escorted him to the B3-B4 classroom.
>
> I then went up to the mezzanine where inmates told me inmate Michael Turi required medical attention. I went to M10 where I observed Turi sitting on his bed with a laceration under his right eye, an abrasion and contusion on his forehead. After calling for medical to look at Turi, I escorted him down to B-Pod center and interviewed him. I asked Turi what had happened. Turi stated that Jordan had assaulted him. Turi added that he did not strike Jordan, because he anticipates that he will be leaving jail soon and did not want to risk adding charges to his case. Turi said he stood there and took the punches. Turi's wounds are consistent with his story while Jordan shows no sign on injury (see attached photos). I asked Turi if he wanted to press charges, he replied "yes."
>
> After handing Turi off to assisting officers, I went and spoke with Money. Money stated that he was not involved in the altercation. Money claimed that he had witnessed the assault and saw Jordan strike Turi multiple times in his facial region. I had asked Money why I saw him yelling, he said he was trying to prevent "amigo" (later identified as inmate Alexis Aviles) from striking Jordan in retaliation. After speaking with Sgt. Boots, he stated that no strikes were thrown by Money or Aviles. Money was placed back into B3M1 without incident.
>
> After looking at the severity of Turi's laceration, QCC staff had to send Turi to the hospital via road car for further evaluation and treatment. Jordan was escorted to B1G8 without incident. Jordan will be pending a hearing for assaulting any person, violation of Indiana criminal law, and not being properly clothed. Turi will not face any disciplinary action due to witnesses stating he did not throw any strikes.

Dkt. 15-1.

Jail staff took photographs of both Mr. Turi and Mr. Jordan. Dkt. 15-2.

On April 19, Officer Manna notified Mr. Jordan of the three charges (assaulting any person, criminal offense as defined by Indiana statute, and not being properly clothed). Dkt. 15-3. The State filed formal criminal charges in state court on April 21, 2023, under cause number 82D03-2304-F6-2401 (battery resulting in moderate bodily injury). The case was ultimately dismissed by the State without prejudice on June 14, 2023. Dkt. 15-9 at 5.

On April 23, 2023, the disciplinary hearing officer (DHO) held a hearing. Dkt. 15-1. When the DHO asked Mr. Jordan "if he wanted to speak with me," he "rolled over on his bunk and stated, 'there's nothing to say.'" *Id.* at 2. The DHO found Mr. Jordan guilty based on the officer's conduct report and the photos attached. *Id.* The DHO sanctioned Mr. Jordan with a 30-day loss of earned credit time. *Id.* Mr. Jordan was notified of the hearing result and sanctions on April 23, 2023. Dkt. 15-5.

On August 25, 2023, Mr. Jordan was found guilty of arson and sentenced to the Indiana Department of Correction (IDOC) under cause number 82D03-2212-F4-7455. Dkt. 15-6. Because Mr. Jordan was not in custody of the IDOC at the time of his disciplinary conviction, the IDOC did not formally enter the 30-day loss-of-credit-time sanction against him until October 12, 2023, after Mr. Jordan was transferred to a IDOC facility. Dkt. 15-4; dkt. 15-8.

**C.     Analysis**

Mr. Jordan contends that his due process rights were violated. He challenges the sufficiency of the evidence because the criminal charge of battery was "overturned" in state court. Dkt. 1 at 2-3. Mr. Jordan argues that "[t]he man stated at trial he hit his head on the bunk and said I did it for a bond." *Id.*

3

Before discussing whether there was sufficient evidence to support the disciplinary battery charge, the Court notes that, in fact, there was no criminal trial in state court, nor was there any testimony given. The criminal case was dismissed without prejudice by the State.

In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (internal quotation omitted).

The State's dismissal of the criminal charge of battery against Mr. Jordan did not require the Jail to vacate the disciplinary charges. As noted, the standard of proof is different. Indeed, the evidentiary threshold required for disciplinary proceedings has been described as "meager." *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011).

Although the DHO found Mr. Jordan guilty of all three disciplinary charges, IDOC records reflect that the 30-day deprivation of earned credit time was imposed for the charge of assaulting any person/battery against an offender. *See* dkt. 15-1; dkt. 15-8 at 4. The evidence considered by the DHO consisted of the conduct report describing what several inmates told Officer Manna, the officer's observation of Mr. Turi's injuries, and photographs of Mr. Turi's lacerations and Mr. Jordan's lack of injuries. Mr. Turi was taken to the hospital for treatment. The evidence amply supported the DHO's finding that Mr. Jordan battered/assaulted Mr. Turi. Mr. Jordan's claim fails.

**D.     Conclusion**

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Jordan to the relief he seeks. Accordingly, Mr. Jordan's petition for a writ of habeas corpus must be **denied** and the action **dismissed.**

IT IS SO ORDERED.

Date:    4/10/2025

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

NIKOLAS M. JORDAN
202061
PENDLETON – CF
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
PENDLETON, IN 46064

Natalie Faye Weiss
INDIANA ATTORNEY GENERAL
natalie.weiss@atg.in.gov